The Milwaukee Iron Company and others vs. The Town of Hubbard.

---

The Milwaukee Iron Company and others vs. The Town of Hubbard and its Treasurer.

Cloud on Title: *Injunction to restrain collection of taxes—Parties.*

1. Neither the county nor its treasurer is a necessary party to an action to restrain town officers from collecting certain taxes on lands of the plaintiff, on account of illegal and fraudulent proceedings in the assessment and valuation of the land, although the taxes sought to be avoided include those levied for county purposes.

2. An omission to assess lands to the owners or occupants when they are known, or any excessive valuation thereof intentionally made for the purpose of compelling the owner to pay more than his just proportion of the taxes, is a sufficient ground for declaring the assessment void.

3. Under our statutes, a tax upon land (where the proceedings are not void *upon their face*) is a lien thereon from the time of the assessment; and if illegal, it constitutes a cloud upon the title, before as well as after the tax sale.

4. Equity will therefore interfere, not only after the sale to cancel the certificate, but before a sale, to declare the assessment void and restrain the collection. *Hamilton v. Fond du Lac* (25 Wis., 490), approved and followed.

5. The decision in *Ch. & N. W. Railway Co. v. Fort Howard* (21 Wis., 44) distinguished and approved. The point there decided was only that an injunction would not be granted to restrain a mere trespass (as by the sale of personal property for an illegal tax), where the plaintiff's remedy was complete in an action at law.

APPEAL from the Circuit Court for *Dodge* County.

This action was commenced to restrain the collection of taxes assessed against certain lands owned by the plaintiffs as tenants in common, and to have the taxation and assessment annulled and set aside on the ground of gross irregularities, illegalities, favoritism and fraud on the part of the town officers in assessing the same and in reviewing the assessment.

The complaint alleges the incorporation of each of the companies who join as plaintiffs in the action, and that each of them is, by the act of incorporation and by law, authorized to carry on the business of raising and smelting iron and other ores, and to erect and maintain furnaces therefor, and to acquire, hold, possess and enjoy all real and personal property necessary for conducting such business. It then alleges the purchase of certain lands in the town of Hubbard, and their condition and value; sets out at great length the irregular and illegal acts of the town officers in relation to the assessment of such lands; and states that the tax roll founded upon such assessment is now in the hands of the town treasurer, who is joined as defendant, for collection.

To this complaint the defendants demurred. The grounds of the demurrer appear in the opinion of the court, which also contains a summary of all the material allegations of the complaint.

From an order sustaining the demurrer, the plaintiffs appeal.

*David S. Ordway*, for appellants, claimed that when assessors fraudulently make distinctions in assessing, for the purpose of compelling one to pay more than his just proportion of the taxes, an action can be maintained to restrain the collection of such taxes, citing *Lefferts v. The Board of Supervisors of Calumet*

*County*, 21 Wis., 688; that the objection to the equitable jurisdiction of the court in cases where there is a remedy at law, is not one of jurisdiction at all, citing *Peck v. School Dist.*, 21 Wis., 522; and that it could only be raised by an answer, citing *Tenney v. State Bank*, 20 Wis., 152.

As to the legal capacity of the plaintiffs to sue, he cited, *The Conn. Mut. Life Ins. Co. v. Cross*, 18 Wis., 109; *The Phœnix Bank v. Donnell*, 40 N. Y., 411; *Central Bank of Wisconsin v. Knowlton*, 12 Wis., 624. As to the invalidity of the assessment he cited Blackwell on Tax Titles, p. 144, and cases cited; *Thames Manufacturing Co. v. Lathrop*, 7 Conn., 550; *Marsh v. Chestnut*, 14 Ill., 223; *Billings v. Detten*, 15 Ill., 218; *Roe v. Williston*, 20 Wis., 228; *Crane v. City of Janesville*, id. 305; *Hersey v. Sups. of Milwaukee Co.*, 16 Wis., 185.

*Rising & Hays & L. T. Fribert*, for respondent, as to the right to maintain this action, cited, *The Mayor of Brooklyn v. Meserole*, 26 Wend., 132; *Livingston v. Hollenbeck*, 4 Barb., 10; *Bouton v. City of Brooklyn*, 15 id., 375; *Blake v. City of Brooklyn*, 26 id., 301; *The Susquehanna Bank v. Broom County*, 25 id., 312; *Messeck v. Columbia County*, 50, id., 190; *Van Doren v. The Mayor of New York*, 9 Paige, 388; *Myrick v. The City of La Crosse*, 17, Wis., 442; *Van Cott v. Milwaukee County*, 18 id. 247; *Chi. & N. W. Railway Co. v. Borough of Fort Howard*, 21 id., 44. As to the sufficiency of the complaint they cited *Howes v. The City of Racine*, 21 Wis., 514; and as to the county and its treasurer being necessary parties, *Lefferts v. Calumet County*, 21 Wis., 688; *Winchester v. Tozer*, 24 id., 312.

COLE, J. The complaint was demurred to in this case on the following grounds:

1st. That the court has no jurisdiction of the subject matter of the action.

2d. That the plaintiffs have not legal capacity to sue.

3d. That there is a defect of parties defendant in this, to wit:

That the county of Dodge and the county treasurer of said county are necessary parties defendant to the action.

4th. That the complaint does not state facts sufficient to constitute a cause of action.

The second ground of demurrer is clearly untenable, as a reference to the following authorities shows : *The Central Bank of Wisconsin v. Knowlton,* 12 Wis., 624 ; *The Connecticut Mutual Life Ins. Co. v. Cross,* 18 id., 109 ; and *Phœnix Bank v. Donnell,* 40 N. Y., 410. And it is alleged that the plaintiff corporations are authorized to hold, possess and enjoy all real estate necessary for conducting their business of raising and smelting iron and other ores.

The third ground of demurrer we consider equally unsound. The action is brought to restrain the town authorities from collecting or enforcing the collection of the unpaid taxes assessed against the lands mentioned in the complaint. No relief is sought against the county or against the treasurer of the county, and they are not interested in the litigation in that sense which renders it necessary they shall be made parties. A complete determination of all the questions at issue can be had without joining the county or the county treasurer in the action, and no sufficient reason has been assigned for making either a party.

The first and fourth grounds of demurrer in the case before us resolve themselves in a measure into the same objection, and they will therefore be considered together. While the tax roll of the town of Hubbard for the year 1870, and warrant annexed, were in the hands of the treasurer of the town for the purpose of collecting the taxes for that year, this action was brought to enjoin the collection of certain taxes assessed against the plaintiff's lands in that town and to have the taxes and assessments declared void. This relief is demanded for various reasons. And first it is said that the whole assessment and tax roll based thereon, for the year 1870, were void, because made in the way specified, and after July 5th, 1870. In support of this specific objection; a number of things are stated in

the complaint to show that the assessor and board of review proceeded in a very irregular and unusual manner in making and correcting the assessment roll. We shall not attempt to notice all these alleged irregularities or rather illegalities in their proceedings. It is sufficient to say that according to the allegations of the complaint these taxing officers not only fell into great errors of judgment in respect to the duties which the law imposed upon them, but they were guilty of gross favoritism and fraud in fixing the valuation of the real estate in that town.

It is alleged that the valuation of the plaintiffs' lands, and also of all the lands in the town, was fixed in the first place by the assessor, and placed on the assessment roll in an illegal manner, which is specified in the complaint, was arrived at upon an improper, unjust and illegal basis, and that this was knowingly, fraudulently and wilfully done by the assessor, with the intention and design of compelling the plaintiffs to pay more than their just proportion of the taxes for 1870, as the plaintiffs believe. Also, that this valuation and assessment was afterwards, and after July 5th, 1870, abandoned by the assessor without proof under oath, and was changed to that which now appears on the tax roll; that this change and abandonment were made with the knowledge of and by the advice of the other members of the board of review, who arbitrarily, and contrary to proof under oath, and upon an illegal basis, directed and ordered the assessor to raise the valuation of the plaintiffs' lands to the figures which are now set over against the same on the tax roll; that this valuation is greatly above their true value; that the assessment of the lands was not made to the owners, although the owners were then known; that the lands were not and are not entered upon the tax roll or upon the corrected and verified assessment roll, for 1870, in the name of or opposite the name of either the owner or occupants of said lands, although the names of both and all the owners and occupants were known to the assessor and to each

member of the board of review, when the assessment was made; that the valuation of plaintiffs' lands is unjust and intentionally increased so as to be out of proportion to the value of the other property in said town, which is entered upon the tax roll; and that this over-valuation was made intentionally and fraudulently by the assessor and board of review, for the purpose and with the design of compelling the plaintiffs to pay more than their just proportion of the taxes for the year 1870.

In specifying some of the changes made in the assessment roll, by the board of review, of the valuation of plaintiff's lands as made by the assessor, it is stated that the valuation of one eighty acre tract was increased from $2,400, to $64,000; another from $2,000, to $54,000; a hundred and sixty acre tract was increased from $4,800, to $23,525; an eighty acre from $80,000, to $115,000; another from $160,000, to $180,000; and another eighty from $2,400, to $10,000; while the valuation of other property as made by the assessor, was greatly reduced by the board of review—without the oath or sworn statement of any one—below its true value, specifying an eighty acre tract belonging to the Northwestern Iron Company, the valuation of which was reduced by the board, from $80,000, to $24,000, and that this was done fraudulently, and with intent to favor that company, and to relieve it from the payment of its full and fair proportion of the taxes for the year 1870, and to increase unfairly the taxes of the plaintiffs. These, in substance, are some of the matters stated in the complaint. And they are abundantly sufficient to show beyond all question, if sustained by proof, that the assessment made and taxes levied upon the lands of the plaintiffs, are absolutely void, not only because the property was not assessed to the known owners and occupants, and therefore invalid under the decisions of *State ex rel. Roe v. Williston*, 20 Wis., 228; *Crane v. The City of Janesville*, id., 305; and *Hamilton v. The City of Fond du Lac*, 25 id., 490, but they are also illegal and void on account of the fraudulent discrimination made by the taxing officers in

the valuation and listing of the lands. *Lefferts v. The Board of Supervisors of Calumet Co.*, 21 Wis., 688. And, this being so, the question arises, will a court of equity interfere at this stage, while the warrant and tax roll are in the hands of the town treasurer, and restrain the collection of the taxes and set the assessments aside, or must the plaintiffs wait until the lands have been sold by the county treasurer, and tax certificates issued against them? It is claimed on the part of the defendants that, in the most favorable view of the law for the plaintiffs, they must wait until the lands are sold, and that the action is prematurely brought.

The doctrine that a court of equity will interfere in order to cancel and annul tax certificates which have been issued for a void tax, is well established in this state. This doctrine is founded upon the true principles of equity jurisprudence, and is generally referred to the jurisdiction of a court of chancery in actions *quia timet*. Even in New York, where the courts, upon grounds of public policy, have always evinced the greatest reluctance to interfere to restrain the collection of a tax, it is conceded that "when the tax is upon land, and the law allows it to be sold to collect the tax, and the conveyance to be executed by the proper officer would be conclusive evidence of title, and the tax was not void, on its face, a suit in the nature of a bill *quia timet* will lie." DENIO, C. J. in *The Susquehanna Bank v. Supervisors of Broom Co.*, 25 N. Y., 312–314. In this state, the jurisdiction of the court has been maintained on the precise ground indicated in the above extract by Chief Justice DENIO, because the land was liable to be sold for the tax, and the deed under our law was made either conclusive or *prima facie* evidence of the regularity of all the proceedings of the taxing officers. It is true that this jurisdiction has generally been invoked after the sale, and after the tax certificate issued. In these cases, relief has been granted, and the tax certificate has been canceled, unless the instrument was void on its face so as to constitute no cloud on the title.

But in the case of *Hamilton v. The City of Fond du Lac, supra,* the court interfered to cancel and set aside the tax certificate which had been issued against the plaintiff's lots for a special improvement, even before sale. In that case the law required that there should be an award of damages sustained, and an assessment of benefits to lots in consequence of the improvements. The city was authorized to issue certificates for the benefits assessed, and, if the amount of the certificate was not paid to the holder previous to the levying of the general city taxes, it was specially assessed upon the lot benefited, and was collected as other taxes assessed upon the real estate of the city. For irregularities in the assessment this special tax so levied against the plaintiff's lots was declared void, and the assessment and certificate were held to be a cloud upon the title. And this was while the assessment roll with the usual warrant was in the hands of the city treasurer for the collection of the tax. The court restrained the collection of the tax, and ordered this certificate to be delivered up and canceled. The same objection was taken to the complaint in that case that is made the first ground of demurrer in the present one, viz: that the court had no jurisdiction of the subject of the action. But the objection was overruled, and the plaintiff was afforded the relief asked in the complaint.

And there would really seem to be no substantial reason for holding that a court of equity should not interpose and declare an illegal tax assessed against real estate void until after sale. For, as already remarked, the ground upon which the court interferes is to afford preventive relief, and to quiet title by removing an instrument which throws a cloud upon it. Now, under our statute, all taxes assessed on any tract or parcel of land, and all costs, charges and interest thereon, are made a lien on such land until paid. Section 31, chap. 22, Laws 1859. The illegal levy and assessment are therefore, under this law, as much a cloud upon the title before as after the sale of the land. For the tax is expressly made an incumbrance upon the

property from the time it is assessed against the land, and it would constitute a breach of a covenant against incumbrances contained in a deed which was executed after such assessment. *Peters v. Myers*, 22 Wis., 602. The existence of these taxes assessed against the property most materially affects its value, as much as if the lands had actually been sold to collect them. We, therefore, are unable to conceive any reason why a court of equity should decline to exert its jurisdiction to declare them void until the lands have been sold. They really, in their present form, constitute a cloud upon the title of the most serious character. The illegalities complained of do not appear upon the face of the proceedings, but must be shown *dehors* the record. The case seems to come fully within the principle of the decision in *Hamilton v. The City of Fond du Lac*, and is ruled by that adjudication. See also *Drake v. Phillips*, 40 Ill., 388; *Scribner v. Allen*, 12 Minnesota, 148; *Palmer v. The Township of Napoleon*, 16 Mich., 176, and *Judd et al. v. The Town of Fox Lake et al*, unreported.

It is insisted on the part of the defendants that the decision in *Chicago and N. W. Railway Co. v. The Borough of Ft. Howard*, 21 Wis., 44, shows that this action cannot be maintained. That action was brought " to restrain the officers of the borough of Ft. Howard from levying upon and selling the personal property of the railroad company for the purpose of collecting a tax." It is true, the tax was assessed upon real estate. But it was not claimed or intimated that the action was instituted for the purpose of removing a cloud thrown over the title by a void assessment. The attention of the court was not called to any such question, and no relief of the kind was demanded. The court simply decided the case presented, that a court of equity would not interfere by way of injunction to prevent a mere trespass, when the remedy of the injured party was complete by an action at law. We do not intend to disturb that decision.

It is stated in the brief of the counsel for the plaintiffs that the main purpose of this action was, if possible, to obtain from

the court a construction of section 16, chapter 130, Laws 1868, as to the proper method for estimating the value of lands containing "mines, minerals, quarries or other valuable deposits, known to be available therein." We, however, decline entering upon the consideration of the meaning and object of that section on this appeal.   We are of the opinion that the court has jurisdiction of the subject matter of this action, and that the complaint states facts sufficient to entitle the plaintiffs to the relief demanded.

·   *By the Court.*—The order of the circuit court, sustaining the demurrer to the complaint is reversed, and the cause remanded for further proceedings.